**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>Actavis Elizabeth, LLC, Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries Ltd., Pliva, Inc., Mylan Inc., Mylan Pharmaceuticals Inc., UDL Laboratories, Inc., Par Pharmaceutical, Inc., Qualitest Pharmaceuticals, Inc., Heritage Pharmaceuticals Inc., Breckenridge Pharmaceutical, Inc., and Upsher-Smith Laboratories, Inc.,<br><br>        Defendants. | Case No. 17-cv-1039<br><br><br>**<u>COMPLAINT</u>**<br><br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF THE ACTION ................................................................. 1

II.   JURISDICTION AND VENUE ............................................................... 5

III.  THE PARTIES.......................................................................................... 7

    A.    Plaintiff ........................................................................................... 7

    B.    Defendants ...................................................................................... 7

    C.    Agents and Co-Conspirators ...................................................... 10

IV.   CLASS ACTION ALLEGATIONS ...................................................... 11

V.    FACTUAL ALLEGATIONS ................................................................ 14

    A.    The Structure Of The Generic Propranolol Market Facilitated Defendants' Collusion ................................................ 14

    B.    Opportunities for Collusion ....................................................... 16

    C.    Defendants Conspired To Increase Prices of Generic Propranolol Significantly Above Competitive Levels.................... 18

    D.    Defendants Are Under Civil And Criminal Investigation For Price-Fixing Generic Drugs ............................................. 28

FIRST CLAIM FOR RELIEF  VIOLATION OF THE SHERMAN ACT, 15 U.S.C. § 1 (ON BEHALF OF PLAINTIFF AND THE NATIONWIDE INJUNCTIVE RELIEF CLASS AGAINST ALL DEFENDANTS)....................................... 30

SECOND CLAIM FOR RELIEF  VIOLATION OF STATE ANTITRUST LAWS (ON BEHALF OF PLAINTIFF AND THE DAMAGES CLASS AGAINST ALL DEFENDANTS) ................................................................ 31

THIRD CLAIM FOR RELIEF  VIOLATION OF STATE CONSUMER PROTECTION STATUTES (ON BEHALF OF PLAINTIFF AND THE DAMAGES CLASS AGAINST ALL DEFENDANTS)................................................ 53

FOURTH CLAIM FOR RELIEF  UNJUST ENRICHMENT (ON BEHALF OF PLAINTIFF AND THE DAMAGES CLASS AGAINST ALL DEFENDANTS)........ 68

VI.   PRAYER FOR RELIEF ........................................................................ 69

VII.  JURY DEMAND.................................................................................... 70

American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan ("Plaintiff") individually and on behalf of others similarly situated, alleges a conspiracy among Defendants Actavis Elizabeth, LLC; Teva Pharmaceuticals USA, Inc.; Teva Pharmaceutical Industries Ltd.; Pliva, Inc.; Mylan Inc.; Mylan Pharmaceuticals Inc.; UDL Laboratories, Inc.; Par Pharmaceutical Inc.; Qualitest Pharmaceuticals, Inc.; Heritage Pharmaceuticals Inc.; Breckenridge Pharmaceutical, Inc.; and Upsher- Smith Laboratories, Inc., (collectively "Defendants"), to increase the prices of generic propranolol.

## I.    SUMMARY OF THE ACTION

1.    One of the most pressing public policy issues of our time is the rising costs of medical care.  Historically, generic drug competition provided life-saving medications to patients at a reasonable price, bringing down overall health care costs.  Generic drugs, unlike branded drugs protected by patents, may be freely manufactured and distributed once approved by the United States Food & Drug Administration.  Generic drug manufacturers do not face the same research and development costs as innovator pharmaceutical companies, and they are unable to lawfully create or protect monopolies because they do not own patents covering their products.  For decades, generic drug manufacturers competed to provide safe, effective, and inexpensive medications.  The result was vigorous competition, appropriately slim profit margins, and prices that tracked manufacturer costs and patient demand.  Patients and others in the pharmaceutical supply chain benefited from competition and low prices.

2.    In recent years, however, the market for generic drugs has been turned on its head.  Prices for hundreds of generic drugs have doubled, tripled, or increased by even larger amounts—in some cases, ten times or more—with no apparent market explanation.  These price increases were unprecedented, increasing costs to patients and others who indirectly purchased, paid, or reimbursed for generic drugs intended for use by themselves, their families, or their

members, participants, employees, or insureds.  The price increases have been so severe that many patients have been forced to give up life-saving medication they were previously able to afford.

3.      These dramatic price increases did not result from independent market forces, such as increased costs or increased demand.  Instead, in many instances, these increased prices were the consequence of unlawful collusion among generic drug manufacturers who chose illicit profits over the health of patients who rely on their products.

4.      The inexplicable and skyrocketing prices of generic drugs led to several government investigations, including by the Antitrust Division of the United States Department of Justice ("DOJ"), the United States Senate, the United States House of Representatives, and at least twenty States.  The DOJ and at least twenty State Attorney Generals are currently conducting a wide-ranging investigation into collusion among generic drug companies.  Many generic drug companies, including multiple Defendants in this action, have received federal grand jury subpoenas.  These investigations are reported to cover more than a dozen companies and over two dozen drugs.

5.      It has also been reported that, over the summer of 2016, a generic drug company sought leniency from the DOJ in exchange for reporting a conspiracy to fix the prices of generic drugs.  To avail itself of the DOJ's Corporate Leniency Policy, a company must confess to its participation in an unlawful conspiracy with candor and completeness, and provide full, continuing, and complete cooperation that advances the DOJ in its investigation.  Thus, it appears that at least one generic drug company has already confessed to the existence of at least one antitrust conspiracy and its participation in it.

6.      On December 14, 2016, twenty States filed a civil case against six generic drug manufacturers, including Defendants Heritage, Teva, and Mylan.  The States allege that their investigation, which began in July 2014 and "is still ongoing," "uncovered evidence of a broad, well-coordinated and long-running series of schemes to fix the prices and allocate markets for a number of generic pharmaceuticals in the United States."  The States' "initial civil action" concerned two generic drugs: Doxycycline Hyclate Delayed Release and Glyburide.  The States have made clear that the evidence of wrongdoing they have uncovered extends far beyond the defendants and drugs identified in their "initial civil action."  The Attorney General of Connecticut, George C. Jepson, whose office led the States' antitrust investigation, told the New York Times: "We believe that this is just the tip of the iceberg.  I stress that our investigation is continuing, and it goes way beyond the two drugs in this lawsuit, and it involves many more companies than are in this lawsuit."

7.      Also on December 14, 2016, the DOJ brought felony charges against two former senior generic pharmaceutical executives for their roles in conspiracies to fix prices, rig bids, and allocate customers for certain generic drugs.  The DOJ alleges that Jeffrey Glazer, the former CEO of Defendant Heritage Pharmaceuticals, and Jason Malek, the former president of the same company, conspired to fix prices, rig bids, and allocate customers for doxycycline hyclate, an antibiotic.  The DOJ also alleges that Glazer and Malek conspired to fix prices and allocate customers for glyburide, a medicine used to treat diabetes.  The DOJ alleges that the "doxycycline hyclate conspiracy" began in approximately April 2013 and continued until at least December 2015.  The DOJ alleges that the "glyburide conspiracy" began in approximately April 2014 and continued until at least December 2015.

8.     Brent Snyder, Deputy Assistant Attorney General for the DOJ, said that "these two executives sought to enrich themselves at the expense of the sick and vulnerable individuals who rely upon access to generic pharmaceuticals as a more affordable alternative to brand-name medicines."

9.     Special Agent in Charge Michael Harpster of the Federal Bureau of Investigation's Philadelphia Division stated: "Conspiring to fix prices on widely-used generic medications skews the market, flouts common decency—and very clearly breaks the law."  He continued: "It's a sad state of affairs when these pharmaceutical executives are determined to further pad their profits on the backs of people whose health depends on the company's drugs. The FBI stands ready to investigate and hold accountable those who willfully violate federal antitrust law."

10.     The DOJ's charges are the result of an ongoing DOJ investigation into price fixing, bid rigging, and other anticompetitive conduct in the generic pharmaceutical industry.

11.     This action addresses a conspiracy to fix the prices of generic propranolol. Propranolol was discovered in 1964, and is the generic version of Inderal.  The U.S. Food and Drug Administration approved Inderal, developed by Wyeth Pharmaceuticals, Inc., in 1967. Propranolol is a beta-blocker.  Beta-blockers are medications that are used to manage cardiac arrhythmias; they operate by blocking the receptor sites for epinephrine (adrenaline) and norepinephrine (noradrenaline) on adrenergic beta receptors.  Propranolol is used to treat tremors, angina (chest pain), hypertension (high blood pressure), heart rhythm disorders, and other heart or circulatory conditions.  Propranolol is also used to treat or prevent heart attack, and to reduce the severity and frequency of migraine headaches.  Propranolol is reportedly the highest-selling beta-blocker as measured by prescriptions.

12.     Defendants control the United States market for generic propranolol.  Certain of

Defendants, including Actavis, Teva, Mylan, and Heritage have received grand jury subpoenas

and are under active investigation by the DOJ.  Until 2013, Defendants competed, resulting in

competitive and stable low prices.  But beginning in 2013, Defendants agreed to increase prices

and eliminate competition.  Their conspiracy succeeded in increasing generic propranolol prices

significantly.  Defendants' conspiracy restrained trade and is *per se* unlawful under federal and

state law.

13.     As alleged below, Defendants' scheme injured Plaintiff and the Classes of indirect

purchasers they seek to represent causing them to overpay for generic propranolol. Plaintiff seeks

to recover these overcharges and seek other relief arising out of Defendants' conspiracy to fix the

prices of: (1) Propranolol capsules during the period from February 20, 2013 to the present

("Propranolol Capsules Class Period"), and (2) for Propranolol tablets during the period from

February 9, 2015 to the present ("Propranolol Tablets Class Period") (both class periods are

referred to collectively as the "Class Periods").

## II.    <u>JURISDICTION AND VENUE</u>

14.     Plaintiff brings this action to obtain injunctive and declaratory relief, as well as

costs of suit and attorneys' fees, arising from Defendants' violations of the Sherman Act,

15 U.S.C. § 1.  Plaintiff also seeks injunctive and declaratory relief, costs of suit and attorneys'

fees, and damages, arising from Defendants' violations of state laws, pursuant to Plaintiff's

second through fourth claims for relief, as set forth below.

15.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337,

and 1367.  This Court also has jurisdiction pursuant to 15 U.S.C. § 26.

16.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(d) and the Class

Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1711, *et seq.*, which vests original

jurisdiction in the district courts of the United States for any multi-state class action where the aggregate amount in controversy exceeds $5 million and where the citizenship of any member of the class of Plaintiffs is different from that of any defendant.  The $5 million amount-in-controversy and diverse citizenship requirements of CAFA are satisfied in this case.

17.    This Court has personal jurisdiction over Defendants pursuant to the Clayton Act, 15 U.S.C. § 22, and the New York long-arm statute, N.Y. C.P.L.R. § 302, because Defendants transact substantial business within the state of New York, including in this district, and Defendants' conspiracy has injured at least many thousands of New York citizens who have overpaid for necessary medications, including in this district.  Defendants regularly conduct and solicit business in New York, including in this district, derive substantial revenue from products that are used and consumed in New York, including in this district, and derive substantial revenue from interstate commerce.

18.    Venue is proper under the Clayton Act because Defendants knowingly transact a large volume of business in New York in the form of sales of pharmaceuticals, including generic propranolol.  15 U.S.C. § 22.

19.    Venue is also appropriate in this district under 28 U.S.C. § 1391(b) and (c). During the Class Periods, Defendants transacted business, were found, or had agents in this district and because a significant amount of affected interstate trade and commerce was carried out in this district.

20.    The activities of the Defendants were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States.  Defendants' products are sold in the flow of interstate commerce.

21.     By reason of the unlawful activities alleged herein, Defendants substantially affected commerce throughout the United States, causing injury to Plaintiff and members of the Classes (as defined below). Defendants, directly and through their agents, engaged in a conspiracy affecting all states to fix and inflate prices of generic propranolol, which unreasonably restrained trade and adversely affected the market for generic propranolol.

## III.    THE PARTIES

### A.    Plaintiff

22.     Plaintiff American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan ("DC 37") is a health and welfare benefit plan covering public sector employees, retirees and their families. Its principal place of business is in New York, New York. District Council 37 ("the Union") is New York City's largest public employee union. DC 37's health and welfare benefit plan covers approximately 125,000 active union members as well as 50,000 retirees and their families. The Union includes 51 local unions, representing public sector employees serving in thousands of job titles from Accountants to Zoo Keepers. Members covered by DC 37's benefit plan work in almost every agency in New York City including but not limited to the City's police and fire departments, hospitals, schools, libraries, social service centers, water treatment facilities, and city colleges. DC 37 provides supplemental health benefits, including a prescription drug benefit to its members, retirees, and their families. Throughout the Class Periods and throughout the United States, DC 37 indirectly purchased, paid, and reimbursed for generic propranolol intended for consumption by its members, retirees, and their families.

### B.    Defendants

23.     Defendant Actavis Elizabeth, LLC ("Actavis") is a Delaware limited liability company with its principal place of business at 200 Elmora Ave., Elizabeth, NJ 07207. In 2012,

Watson Pharmaceuticals acquired then-Switzerland-based Actavis Group to form Actavis plc, later known as Allergan plc after Actavis plc acquired Allergan Inc. in 2015. In August 2016, Teva Pharmaceutical Industries Ltd. acquired Allergan plc's generic pharmaceutical business for $40.5 billion. Actavis was among the Allergan plc generic pharmaceutical entities acquired by Teva in 2016. During the Class Periods, Actavis marketed and sold generic propranolol in this District and throughout the United States.

24.     Defendant Teva Pharmaceuticals USA, Inc. ("Teva USA") is a Delaware corporation with its principal place of business at 1090 Horsham Road, North Wales, Pennsylvania 19454. Teva USA is a wholly owned subsidiary of Defendant Teva Pharmaceutical Industries Ltd. During the Propranolol Tablets Class Period, Teva USA marketed and sold generic propranolol tablets in this District and throughout the United States.

25.     Defendant Teva Pharmaceutical Industries Ltd. ("Teva Israel") has its principal place of business in Petah Tikva, Israel. During the Class Periods, Teva Israel, through its subsidiary Teva USA, marketed and sold generic propranolol tablets to customers in this District and other locations in the United States.

26.     Defendant Pliva, Inc. ("Pliva") is a New Jersey corporation with its principal place of business at 72 Deforest Ave. East Hanover, NJ 07936. Pliva is a subsidiary of Teva Pharmaceutical Industries, Ltd. During the Class Periods, Pliva sold generic Propranolol to customers in this District and other locations in the United States.

27.     Defendants Teva Pharmaceutical Industries Ltd., Teva Pharmaceuticals USA, Inc., and Pliva, Inc. are referred to collectively as "Teva."

28.     Defendant Mylan Inc. is a Pennsylvania corporation with its principal place of business at 1000 Mylan Blvd., Canonsburg, Pennsylvania 15317. The parent corporation of

Mylan Inc. is Mylan N.V., a Netherlands corporation with global headquarters in Hertfordshire, U.K., and in Canonsburg, Pennsylvania.  During the Class Periods, Mylan Inc. marketed and sold generic propranolol in this District and throughout the United States through its subsidiaries, Mylan Pharmaceuticals Inc. and UDL Laboratories, Inc.

29.    Defendant Mylan Pharmaceuticals Inc. is a West Virginia corporation with its principal place of business at 781 Chestnut Ridge Road, Morgantown, West Virginia 26505. During the Class Periods, Mylan Pharmaceuticals Inc. marketed and sold generic propranolol in this District and throughout the United States.

30.    Defendant UDL Laboratories, Inc. ("UDL") is an Illinois corporation with its principal place of business at 1718 Northrock Ct, Rockford, Illinois 61103.  UDL is, and was throughout the Class Period, a subsidiary of Mylan Inc.  During the Propranolol Tablets Class Period, UDL marketed and sold generic propranolol tablets in this District and throughout the United States.

31.    In this complaint, Defendants Mylan Inc., Mylan Pharmaceuticals Inc. and UDL will be referred to collectively as "Mylan."  Mylan maintains an office at 405 Lexington Avenue, New York, New York 10174.

32.    Defendant Par Pharmaceutical Holdings, Inc. ("Par"), is a Delaware corporation with its principal place of business at One Ram Ridge Road, Chestnut Ridge, New York 10977. In September 2016, Endo International PLC ("Endo International"), an Irish corporation with its principal place of business located in Dublin, Ireland, completed an acquisition of Par at which time it created a combined U.S. Generics segment that included Par and Qualitest, naming the segment "Par Pharmaceutical, an Endo International Company."  On information and belief, Qualitest merged into Par.

33.     Defendant Qualitest Pharmaceuticals, Inc. ("Qualitest") is an Alabama corporation with its principal place of business in Huntsville, Alabama.  In 2010, Endo International acquired Qualitest for $1.2 billion.  During the Propranolol Tablets Class Period, Qualitest marketed and sold generic propranolol tablets in this District and throughout the United States.

34.     Defendant Heritage Pharmaceuticals Inc. ("Heritage") is a Delaware corporation with its principal place of business at 12 Christopher Way #300, Eatontown, New Jersey 07724. During the Propranolol Tablets Class Period, Heritage marketed and sold generic propranolol tablets in this District and throughout the United States.  Heritage is a subsidiary of Emcure Pharmaceuticals Ltd., based in Pune, India.

35.     Defendant Breckenridge Pharmaceutical, Inc. ("Breckenridge") is a Delaware corporation with its principal place of business at 1 Passaic Ave, Fairfield, New Jersey 07004. During the Propranolol Capsules Class Period, Breckenridge marketed and sold generic Propranolol capsules in this District and throughout the United States.

36.     Defendant Upsher-Smith Laboratories, Inc. ("Upsher-Smith") is a Minnesota corporation with its principal place of business at 6701 Evenstad Drive, Maple Grove, Minnesota 55369.  During the Propranolol Capsules Class Period, Upsher-Smith marketed and sold generic propranolol capsules in this District and throughout the United States.

**C.     Agents and Co-Conspirators**

37.     Defendants' officers, directors, agents, employees, or representatives engaged in the conduct alleged in this Complaint in the usual management, direction, or control of Defendants' business or affairs.

38.     Each of the Defendants acted as the agent of, co-conspirator with, or joint venture partner of the other Defendants and co-conspirators with respect to the acts, violations and common course of conduct alleged in this Complaint.

39.     Various persons, partnerships, sole proprietors, firms, corporations, and individuals not named as Defendants in this lawsuit, and individuals, both known and unknown, participated as co-conspirators with Defendants in the offenses alleged in this Complaint, and performed acts and made statements in furtherance of the conspiracy.  Plaintiff reserves the right to name some or all of these persons and entities as defendants at a later date.

## IV.     <u>CLASS ACTION ALLEGATIONS</u>

40.     Plaintiff brings this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure seeking injunctive and declaratory relief, as well as costs of suit and attorneys' fees, for violations of the Sherman Act, 15 U.S.C. § 1, on behalf of the following class (the "Nationwide Injunctive Relief Class"):

> all natural persons, sole proprietorships, partnerships, limited partnerships, corporations, and other entities, who indirectly purchased, paid and/or reimbursed for generic propranolol capsules and/or tablets from February 20, 2013 and February 9, 2015, respectively, through the present (the "Class Period"), intended for consumption by themselves, their families, or their members, participants, employees or insureds in the United States.  Excluded from the class are governmental entities (except for municipalities with self-funded prescription drug plans), the Defendants, their co-conspirators, along with all of their respective parents, subsidiaries, and/or affiliates, all persons or entities that purchased generic propranolol for purposes of resale or directly from Defendants, "flat co-pay" consumers whose co-payment for generic propranolol remained constant regardless of the price increases herein alleged, and any and all jurors, judges, and justices assigned to hear any aspect of this litigation.

41.     Plaintiff also brings this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking injunctive and declaratory relief, costs of suit and attorneys' fees, and damages, on behalf of itself and class members

residing in states that provide a damages remedy for indirect purchasers (the "Indirect Purchaser States"[1]), on behalf of the following class (the "Damages Class"):

> all natural persons, sole proprietorships, partnerships, limited partnerships, corporations, and other entities, who indirectly purchased, paid and/or reimbursed for generic propranolol capsules and/or tablets from February 20,, 2013 and February 9, 2015, respectively, through the present (the "Class Period"), intended for consumption by themselves, their families, or their members, participants, employees or insureds in the Indirect Purchaser States. Excluded from the class are governmental entities (except for municipalities with self-funded prescription drug plans), the Defendants, their co-conspirators, along with all of their respective parents, subsidiaries, and/or affiliates, all persons or entities that purchased generic propranolol for purposes of resale or directly from Defendants, "flat co-pay" consumers whose co-payment for generic propranolol remained constant regardless of the price increases herein alleged, and any and all jurors, judges, and justices assigned to hear any aspect of this litigation.

42.    The Nationwide Injunctive Relief Class and the Damages Class are collectively referred to herein as the "Classes" unless otherwise indicated.

43.    While Plaintiff does not know the exact number of the members of the Classes, Plaintiff believes there are at least hundreds of thousands of members in each Class.

44.    Common questions of law and fact exist as to all members of the Classes.  This is particularly true given the nature of Defendants' conspiracy, which was applicable to all of the members of the Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

(a)    Whether Defendants engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of generic propranolol sold in the United States;

(b)    The identity of the participants of the alleged conspiracy;

---

[1] The "Indirect Purchaser States" are states that provide for a damages remedy for indirect purchasers under state antitrust laws: Alabama, Arkansas, Arizona, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, West Virginia, and Wisconsin.

(c)    The duration of the alleged conspiracy and the acts carried out by Defendants in furtherance of the conspiracy;

(d)    Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e)    Whether the alleged conspiracy violated state laws, as alleged in the Second through Fourth Claims for Relief;

(f)    Whether the conduct of Defendants, as alleged in this Complaint, caused injury to the business or property of Plaintiff and the members of the Classes;

(g)    The effect of the alleged conspiracy on the prices of generic propranolol sold in the United States during the Class Periods;

(h)    The appropriate injunctive and related equitable relief for the Nationwide Injunctive Relief Class; and

(i)    The appropriate class-wide measure of damages for the Damages Class.

45.    Plaintiff's claims are typical of the claims of the members of the Classes, and Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff and all members of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially-inflated prices for generic propranolol purchased indirectly from Defendants.

46.    Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.  Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Classes.  Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust, consumer protection, and class action litigation.

47.    The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

48.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

49.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## V.    FACTUAL ALLEGATIONS

### A.    The Structure Of The Generic Propranolol Market Facilitated Defendants' Collusion

50.    Defendants manufacture, market, and sell, among other products, generic versions of branded drugs, including generic propranolol, for which FDA approval can be sought only after the patent on the corresponding branded drug expires.

51.    According to the FDA's Glossary, a generic drug is "the same as a brand name drug in dosage, safety, strength, how it is taken, quality, performance, and intended use."  Once the FDA approves a generic drug as "therapeutically equivalent" to a brand name drug, the

generic version "can be expected to have equal effect and no difference when substituted for the brand name product."

52.     The purpose of authorizing a generic drug industry in the United States was to encourage the manufacture of less expensive, non-branded substitutes for branded prescription drugs that either had no patent exclusivity or for which the patent exclusivity was expiring. Once the patent on a brand-name drug expires, generic manufacturers can move in, creating more competition and lower prices.  In a January 2012 report, the GAO noted that "[o]n average, the retail price of a generic drug is 75 percent lower than the retail price of a brand-name drug." Economic literature in the healthcare market further confirms that competition by generic products results in lower prices for consumers.  In the period before generic entry, a brand drug commands 100% of the market share for that drug and the brand manufacturer can set the price without the impact of competitive market forces.  Once the first generic enters the market, however, a brand drug rapidly loses sales, on average 90% within a year.  As more generic manufacturers enter the market, prices for generic versions of a drug predictably will continue to decrease because of competition among the generic manufacturers, and the loss of sales volume by the brand drug to the corresponding generic accelerates as more generic options are available to purchasers.

53.     Due to the sizable price differentials between branded and generic drugs, as well as other institutional features of the pharmaceutical industry, pharmacists liberally and typically substitute the generic drug when presented with a prescription for the branded drug.  Since passage of the Hatch-Waxman Act (Pub. L. No. 98-417, 98 Stat. 1585 (codified at 15 U.S.C. §§ 355, 360cc; 35 U.S.C. §§ 156, 271)), every state has adopted substitution laws requiring or permitting pharmacies to substitute generic drug equivalents for branded drug prescriptions

(unless the prescribing physician specifically orders otherwise by writing "dispense as written" or similar language on the prescription).

54.     According to a report by the Generic Pharmaceutical Association ("GPhA"), nearly 3.8 billion (88%) of the total 4.3 billion prescriptions dispensed in the U.S. in 2014 were filled using generic drugs.

55.     A mature generic market, such as the market for propranolol, has several generic competitors.  Due to the fact that each generic is readily substitutable for another generic of the same brand drug, the products behave like commodities, with pricing being the main differentiating feature and the basis for competition among manufacturers.  Over time, generics' pricing nears the generic manufacturers' marginal costs.

56.     Generic competition usually enables buyers to purchase generic versions of the brand drug at a substantially lower price than the brand drug.  Generic competition to a single blockbuster brand drug product can result in billions of dollars in savings to consumers, insurers, local, state, and federal governments, and others.  Indeed, one study found that the use of generic medicines saved the United States healthcare system $254 billion in 2014 alone, and $1.68 trillion between 2005 and 2014.

**B.**     **Opportunities for Collusion**

57.     Defendants are members of the Generic Pharmaceutical Association ("GPhA"), the "leading trade association for generic drug manufacturers and distributors, manufacturers of bulk active pharmaceutical chemicals, and suppliers of other goods and services to the generic industry."  Senior executives of Defendants participate actively in the GPhA.  Representatives of Defendants met in person at GPhA meetings before and During the Class Periods, including: the Annual Meeting on February 20-22, 2013 in Orlando, Florida; the Technical Conference on October 28-30, 2013 in Bethesda, Maryland; and the Annual Meeting on February 9-11, 2015 in

Miami Beach, Florida. These in-person meetings provided additional opportunities to collude. As the States allege: these trade shows "provide generic drug manufacturers . . . with ample opportunity to meet, discuss, devise, and implement a host of anticompetitive schemes that unreasonably restrain competition[.]" Indeed, within a few weeks of the February 2013 and February 2015 Annual Meetings, the prices of generic propranolol capsules and tablets began to soar.

58.    The States allege that Mylan and other generic drug companies used industry trade shows and customer conferences to collude, including conferences hosted by the National Association of Chain Drug Stores ("NACDS"), Healthcare Distributions Management Association ("HDMA," now known as the Healthcare Distribution Alliance), and Efficient Collaborative Retail Marketing ("ECRM"), among others. The States further allege: "At these various conferences and trade shows, sales representatives from many generic drug manufacturers . . . have opportunities to interact with each other and discuss their respective business and customers. Attendant with many of these conferences and trade shows are organized recreational and social events, such as golf outings, lunches, cocktail parties, dinners, and other scheduled activities that provide further opportunity to meet with competitors outside of the traditional business setting. Of particular importance here, generic drug manufacturer representatives who attend these functions, . . . use these opportunities to discuss and share upcoming bids, specific generic drug markets, pricing strategies and pricing terms in their contracts with customers, among other competitively-sensitive information."

59.    The States also allege that sales representatives of generic drug manufacturers "get together separately, in more limited groups, allowing them to further meet face-to-face with their competitors and discuss their business." "In fact, high-level executives of many generic

drug manufacturers get together periodically for what at least some of them refer to as 'industry dinners.'"  "At these industry dinners, one company is usually responsible for paying the dinner for all of the attendees.  The company that pays the bill is generally determined by alphabetical order."

60.     Demand for generic propranolol is relatively inelastic, meaning that Defendants had substantial power to increase prices without significantly reducing volume.  Propranolol is a necessary treatment for millions of patients for which no substitutes are available.  Propranolol is a critical drug necessary for the functioning of a basic health system.  The next-best substitute for generic propranolol is branded propranolol, which costs significantly more than generic alternatives.

C.      **Defendants Conspired To Increase Prices of Generic Propranolol Significantly Above Competitive Levels**

61.     Beginning in approximately 2013 and continuing to the present, Defendants formed and maintained a price-fixing cartel that included all of their generic propranolol products.  Senior executives of each Defendant reached agreement and monitored compliance.

62.     As the following chart indicates, prices for generic propranolol increased significantly.  (The chart is based on NADAC data.)  Prices appear to reflect a "one-way ratchet":  prices never decreased substantially, as one would expect if sudden price increases reflected temporary supply shortages, cost increases, or other benign market explanations.



63.    Medicaid reimbursement data breaks out price levels by manufacturer.  The following charts display Defendants' Medicaid reimbursements per unit for common dosages of generic propranolol.  These charts confirm that Defendants increased their prices in very similar fashion over time:

A.    **Tablets**

    1.    **10 mg Tablets**

        a.    **100 Tablet Bottle**



        b.    **1000 Tablet Bottle**



2. **20 mg Tablets**

a. **100 Tablet Bottle**



b. **1000 Tablet Bottle**



3.    **40 mg Tablets**

a.    **100 Tablet Bottle**



b.    **1000 Tablet Bottle**



4. <u>**60 mg Tablets**</u>

    a. **100 Tablet Bottle**



5. <u>**80 mg Tablets**</u>

    a. **100 Tablet Bottle**



b.     **100 Tablet Bottle**



PROPRANOLOL: Avg. Reimb. per Unit (TAB80MG--500)

**B.    Extended Release Capsules**

  **1.    60 mg Capsules**

   **a.    100 Tablet Bottle**



   **b.    500 Tablet Bottle**



2.    **80 mg Capsules**

a.    **100 Tablet Bottle**



b.    **500 Tablet Bottle**



### 3.    120 mg Capsules

#### a.    100 Tablet Bottle



#### b.    500 Tablet Bottle



### 4. 160 mg Capsules

#### a. 100 Tablet Bottle



PROPRANOLOL: Avg. Reimb. per Unit (CAP160MG--100)

64.    These dramatic price increases were the product of an illicit understanding among Defendants.  The price increases track the Defendants' participation in GPhA meetings in February 2013 and again in February 2015.

### D. Defendants Are Under Civil And Criminal Investigation For Price-Fixing Generic Drugs

65.    Several government enforcers, including the Antitrust Division of the United States Department of Justice ("DOJ"), are investigating Defendants and other generic drug companies regarding price-fixing of generic drugs.

66.    It has been reported that, over the summer of 2016, a generic drug company sought corporate leniency from the DOJ regarding a conspiracy to fix the prices of generic drugs. Pursuant to the DOJ's Corporate Leniency Policy, a company must confess to its participation in

an unlawful conspiracy with candor and completeness, and provide full, continuing, and complete cooperation that advances the DOJ in its investigation. Thus, it appears that at least one generic drug company has already confessed to the existence of at least one antitrust conspiracy and its participation in it.

67.    On December 14, 2016, the DOJ brought felony charges against two former senior generic pharmaceutical executives for their roles in conspiracies to fix prices, rig bids, and allocated customers for certain generic drugs. The DOJ alleges that Jeffrey Glazer, the former CEO of Defendant Heritage Pharmaceuticals, and Jason Malek, the former president of the same company, conspired to fix prices, rig bids, and allocate customers for doxycycline hyclate, an antibiotic. The DOJ also alleges that Glazer and Malek conspired to fix prices and allocate customers for glyburide, a medicine used to treat diabetes. The DOJ alleges that the "doxycycline hyclate conspiracy" began in approximately April 2013 and continued until at least December 2015. The DOJ alleges that the "glyburide conspiracy" began in approximately April 2014 and continued until at least December 2015.

68.    The DOJ's charges are the result of an ongoing DOJ investigation into price fixing, bid rigging and other anticompetitive conduct in the generic pharmaceutical industry.

69.    At least twenty States are also conducting a thorough investigation of collusion among generic drug manufacturers, and filed suit against Defendants Heritage, Teva, Mylan and others on December 14, 2016. The States have made clear that the evidence of wrongdoing they have uncovered extend far beyond the defendants and drugs identified in their "initial civil action." The Attorney General of Connecticut, George C. Jepson, whose office led the States' antitrust investigation, told the New York Times: "We believe that this is just the tip of the

iceberg.  I stress that our investigation is continuing, and it goes way beyond the two drugs in this lawsuit, and it involves many more companies than are in this lawsuit."

70.    The States allege that generic drug manufacturers, including Defendants Heritage, Teva, and Mylan, "routinely sought out their competitors in an effort to reach agreement to allocate market share, maintain high prices and /or avoid competing on price.  These agreements had the effect of artificially maintaining high prices for a large number of generic drugs and creating an appearance of competition when in fact none existed."  The States also allege that generic drug manufacturers, including Defendants Heritage, Teva, and Mylan, "routinely and as part of their regular course of business, sought and obtained agreements with competitors to fix and raise prices."

## **FIRST CLAIM FOR RELIEF**

**VIOLATION OF THE SHERMAN ACT, 15 U.S.C. § 1**
**(On Behalf of Plaintiff and the Nationwide Injunctive Relief Class Against All Defendants)**

71.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs set forth above.

72.    Beginning as early as 2013 and continuing through the present, the exact starting date being unknown to Plaintiff and exclusively within the knowledge of Defendants, Defendants and their unnamed co-conspirators entered into a continuing contract, combination, or conspiracy in unreasonable restraint of trade in violation of the Sherman Act (15 U.S.C. § 1).

73.    In particular, Defendants have combined and conspired to raise, fix, maintain, or stabilize the price of generic propranolol.

74.    As a result of Defendants' unlawful conduct, prices for generic propranolol were raised, fixed, maintained, and stabilized in the United States.

75.    The contract, combination or conspiracy among Defendants consisted of a continuing agreement, understanding, and concerted action among Defendants and their co-conspirators.

76.    For purposes of formulating and effectuating their contract, combination, or conspiracy, Defendants and their co-conspirators did those things they contracted, combined, or conspired to do, including but not limited to:  (1) agreeing to raise, fix, and maintain prices for generic propranolol; (2) raising, fixing, and maintaining prices for generic propranolol; and (3) selling generic propranolol throughout the United States at inflated prices.

77.    As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Nationwide Injunctive Relief Class who purchased generic propranolol have been injured in that they have paid more for generic propranolol than they otherwise would have paid in the absence of Defendants' unlawful conduct.

78.    Defendants' alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

79.    Defendants' unlawful conduct is continuing and will continue unless enjoined by this Court.

80.    Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiff and the Nationwide Injunctive Relief Class seek the issuance of an injunction against Defendants, preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF STATE ANTITRUST LAWS
**(On Behalf of Plaintiff and the Damages Class Against All Defendants)**

81.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs set forth above.

82.     During the Class Periods, Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of generic propranolol in unreasonable restraint of trade and in violation of the following state statues.

83.     Alabama:  By reason of the foregoing, Defendants have violated Alabama Code § 6-5-60.  Plaintiff on behalf of the Damages Class alleges as follows:

a.     Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Alabama; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Alabama; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.     During the Class Periods, Defendants' illegal conduct substantially affected Alabama commerce.

c.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.     By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Alabama Code § 6-5-60.  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Alabama Code § 6-5-60.

84.     Arizona:  By reason of the foregoing, Defendants have violated Arizona Revised Statutes, §§ 44-1401, *et seq.*  Plaintiff on behalf of the Damages Class alleges as follows:

a.     Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout

Arizona; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected Arizona commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Arizona Revised Statutes, §§ 44-1401, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Arizona Revised Statutes, §§ 44-1401, *et seq.*

85.      <u>California</u>:  By reason of the foregoing, Defendants have violated California Business and Professions Code, §§ 16700, *et seq.*  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants' contract, combination, trust or conspiracy was entered in, carried out, effectuated and perfected mainly within the State of California, and Defendants' conduct within California injured all members of the class throughout the United States. Therefore, this claim for relief under California law is brought on behalf of the Damages Class.

b.      Beginning at a time currently unknown to Plaintiff, but at least as early as 2013, and continuing through the present, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in

violation California Business and Professions Code § 16720.  Defendants, and each of them, have acted in violation of § 16720 to fix, raise, stabilize, and maintain prices of generic propranolol at supra-competitive levels.

c.      The aforesaid violations of California Business and Professions Code § 16720 consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of generic propranolol.

d.      For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not in any way limited to the acts, practices and course of conduct set forth above and fixing, raising, stabilizing, and pegging the price of generic propranolol.

e.      The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) price competition in the sale of generic propranolol has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for generic propranolol have been fixed, raised, stabilized, and pegged at artificially high, noncompetitive levels in the State of California; and (3) those who purchased generic propranolol directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

f.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the members of the Damages Class have been injured in their business and property in that they paid more for generic propranolol than they otherwise would have paid in the absence of Defendants' unlawful conduct.  As a result of Defendants' violation of California Business and Professions Code § 16720, Plaintiff and the Damages Class seek treble damages

and their cost of suit, including a reasonable attorney's fee, pursuant to California Business and Professions Code § 16750(a).

86.    <u>District of Columbia</u>:  By reason of the foregoing, Defendants have violated District of Columbia Code, §§ 28-4501, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

a.    Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout the District of Columbia; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and members of the Damages Class, including those who resided in the District of Columbia and/or purchased generic propranolol that was shipped by Defendants or their co-conspirators, were deprived of free and open competition, including in the District of Columbia; and (4) Plaintiff and members of the Damages Class, including those who resided in the District of Columbia and/or purchased generic propranolol that was shipped by Defendants or their co-conspirators, paid supra-competitive, artificially-inflated prices for generic propranolol, including in the District of Columbia.

b.    During the Class Periods, Defendants' illegal conduct substantially affected District of Columbia commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of District of Columbia Code, §§ 28-4501, *et seq*.  Accordingly,

Plaintiff and members of the Damages Class seek all forms of relief available under District of Columbia Code, §§ 28-4501, *et seq*.

87.    <u>Hawaii</u>:  By reason of the foregoing, Defendants have violated Hawaii Revised Statutes, §§ 480-1, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

      a.    Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Hawaii; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

      b.    During the Class Periods, Defendants' illegal conduct substantially affected Hawaii commerce.

      c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

      d.    By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Hawaii Revised Statutes, §§ 480-1, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Hawaii Revised Statutes, §§ 480-1, *et seq*.

88.    <u>Illinois</u>:  By reason of the foregoing, Defendants have violated the Illinois Antitrust Act, 740 Illinois Compiled Statutes 10/1, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Illinois; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected Illinois commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of the Illinois Antitrust Act, 740 Illinois Compiled Statutes 10/1, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under the Illinois Antitrust Act, 740 Illinois Compiled Statutes 10/1, *et seq*.

89.     <u>Iowa</u>:  By reason of the foregoing, Defendants have violated Iowa Code, §§ 553.1, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Iowa; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Iowa; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected Iowa commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Iowa Code, §§ 553.1, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Iowa Code, §§ 553.1, *et seq.*

90.     <u>Kansas</u>:  By reason of the foregoing, Defendants have violated Kansas Statutes, §§ 50-101, *et seq.*  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Kansas; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected Kansas commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Kansas Statutes, §§ 50-101, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Kansas Statutes, §§ 50-101, *et seq.*

91.    <u>Maine</u>:  By reason of the foregoing, Defendants have violated Maine Revised Statutes, 10 M.R.S.A. §§ 1101, *et seq.*  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Maine; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected Maine commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Maine Revised Statutes, 10 M.R.S.A. §§ 1101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Maine Revised Statutes, 10 M.R.S.A. §§ 1101, *et seq.*

92.    <u>Michigan</u>:  By reason of the foregoing, Defendants have violated Michigan Compiled Laws, §§ 445.771, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

a.    Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Michigan; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.    During the Class Periods, Defendants' illegal conduct substantially affected Michigan commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Michigan Compiled Laws, §§ 445.771, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Michigan Compiled Laws, §§ 445.771, *et seq*.

93.    <u>Minnesota</u>:  By reason of the foregoing, Defendants have violated Minnesota Statutes, §§ 325D.49, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

a.    Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Minnesota; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) Plaintiff and members of the Damages Class

were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected Minnesota commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Minnesota Statutes, §§ 325D.49, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Minnesota Statutes, §§ 325D.49, *et seq*.

94.      <u>Mississippi</u>:  By reason of the foregoing, Defendants have violated Mississippi Code, §§ 75-21-1, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Mississippi; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected Mississippi commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Mississippi Code, §§ 75-21-1, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Mississippi Code, §§ 75-21-1, *et seq.*

95.    <u>Nebraska</u>:  By reason of the foregoing, Defendants have violated Nebraska Revised Statutes, §§ 59-801, *et seq.*  Plaintiff on behalf of the Damages Class alleges as follows:

a.    Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Nebraska; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.    During the Class Periods, Defendants' illegal conduct substantially affected Nebraska commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Nebraska Revised Statutes, §§ 59-801, *et seq.*  Accordingly,

Plaintiff and members of the Damages Class seek all forms of relief available under Nebraska Revised Statutes, §§ 59-801, *et seq*.

96.    <u>Nevada</u>:  By reason of the foregoing, Defendants have violated Nevada Revised Statutes, §§ 598A.010, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

a.    Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Nevada; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.    During the Class Periods, Defendants' illegal conduct substantially affected Nevada commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Nevada Revised Statutes, §§ 598A.010, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Nevada Revised Statutes, §§ 598A.010, *et seq*.

97.    <u>New Hampshire</u>:  By reason of the foregoing, Defendants have violated New Hampshire Revised Statutes, §§ 356:1, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout New Hampshire; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected New Hampshire commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes, §§ 356:1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under New Hampshire Revised Statutes, §§ 356:1, *et seq.*

98.      <u>New Mexico</u>:  By reason of the foregoing, Defendants have violated New Mexico Statutes, §§ 57-1-1, *et seq.*  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout New Mexico; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected New Mexico commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of New Mexico Statutes, §§ 57-1-1, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under New Mexico Statutes, §§ 57-1-1, *et seq*.

99.     <u>New York</u>:  By reason of the foregoing, Defendants have violated New York General Business Laws, §§ 340, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout New York; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected New York commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of New York General Business Laws, §§ 340, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under New York General Business Laws, §§ 340, *et seq*.

100.    <u>North Carolina</u>:  By reason of the foregoing, Defendants have violated North Carolina General Statutes, §§ 75-1, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout North Carolina; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected North Carolina commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of North Carolina General Statutes, §§ 75-1, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under North Carolina General Statutes, §§ 75-1, *et seq*.

101.    <u>North Dakota</u>:  By reason of the foregoing, Defendants have violated North Dakota Century Code, §§ 51-08.1-01, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

a.    Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout North Dakota; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.    During the Class Periods, Defendants' illegal conduct substantially affected North Dakota commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of North Dakota Century Code, §§ 51-08.1-01, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under North Dakota Century Code, §§ 51-08.1-01, *et seq*.

102.    <u>Oregon</u>:  By reason of the foregoing, Defendants have violated Oregon Revised Statutes, §§ 646.705, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

a.    Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Oregon; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at

artificially high levels throughout Oregon; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected Oregon commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Oregon Revised Statutes, §§ 646.705, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Oregon Revised Statutes, §§ 646.705, *et seq*.

103.    <u>South Dakota</u>:  By reason of the foregoing, Defendants have violated South Dakota Codified Laws, §§ 37-1-3.1, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout South Dakota; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected South Dakota commerce.

      c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

      d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of South Dakota Codified Laws, §§ 37-1-3.1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under South Dakota Codified Laws, §§ 37-1-3.1, *et seq*.

104.    <u>Tennessee</u>:  By reason of the foregoing, Defendants have violated Tennessee Code, §§ 47-25-101, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

      a.      Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Tennessee; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

      b.      During the Class Periods, Defendants' illegal conduct substantially affected Tennessee commerce.

      c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

      d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Tennessee Code, §§ 47-25-101, *et seq*.  Accordingly, Plaintiff

and members of the Damages Class seek all forms of relief available under Tennessee Code,

§§ 47-25-101, *et seq*.

105.    Utah:  By reason of the foregoing, Defendants have violated Utah Code, §§ 76-

10-3101, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

a.    Defendants' combination or conspiracy had the following effects: (1) price

competition for generic propranolol was restrained, suppressed, and eliminated throughout Utah;

(2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially

high levels throughout Utah; (3) Plaintiff and members of the Damages Class were deprived of

free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-

competitive, artificially-inflated prices for generic propranolol.

b.    During the Class Periods, Defendants' illegal conduct substantially

affected Utah commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct,

Plaintiff and members of the Damages Class have been injured in their business and property and

are threatened with further injury.

d.    By reason of the foregoing, Defendants entered into agreements in

restraint of trade in violation of Utah Code, §§ 76-10-3101, *et seq*.  Accordingly, Plaintiff and

members of the Damages Class seek all forms of relief available under Utah Code, §§ 76-10-

3101, *et seq*.

106.    Vermont:  By reason of the foregoing, Defendants have violated Vermont

Statutes, 9 V.S. §§ 2453, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

a.    Defendants' combination or conspiracy had the following effects: (1) price

competition for generic propranolol was restrained, suppressed, and eliminated throughout

Vermont; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected Vermont commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Vermont Statutes, 9 V.S. §§ 2453, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Vermont Statutes, 9 V.S. §§ 2453, *et seq*.

107.    <u>West Virginia</u>:  By reason of the foregoing, Defendants have violated West Virginia Code, §§ 47-18-1, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout West Virginia; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected West Virginia commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of West Virginia Code, §§ 47-18-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under West Virginia Code, §§ 47-18-1, *et seq.*

108.    <u>Wisconsin</u>:  By reason of the foregoing, Defendants have violated Wisconsin Statutes, §§ 133.01*, et seq.*  Plaintiff on behalf of the Damages Class alleges as follows:

a.    Defendants' combination or conspiracy had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Wisconsin; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.    During the Class Periods, Defendants' illegal conduct substantially affected Wisconsin commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Wisconsin Statutes, §§ 133.01*, et seq.*  Accordingly, Plaintiff and

members of the Damages Class seek all forms of relief available under Wisconsin Statutes,

§§ 133.01, *et seq*.

### THIRD CLAIM FOR RELIEF

**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**
**(On Behalf of Plaintiff and the Damages Class Against All Defendants)**

109.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs set forth above.

110.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or

fraudulent acts or practices in violation of the state consumer protection and unfair competition

statutes listed below.

111.    <u>Arkansas</u>:  By reason of the foregoing, Defendants have violated the Arkansas

Deceptive Trade Practices Act, Arkansas Code, §§ 4-88-101, *et. seq*.  Plaintiff on behalf of the

Damages Class alleges as follows:

a.      Defendants agreed to, and did in fact affect, fix, control, and/or maintain,

at artificial and non-competitive levels, the prices at which generic propranolol was sold,

distributed, or obtained in Arkansas, and took efforts to conceal their agreements from Plaintiff

and members of the Damages Class.  This conduct on the part of the Defendants constituted

"deceptive" and "unconscionable" acts or practices in violation of Arkansas Code, § 4-88-

107(a)(10).

b.      Defendants' unlawful conduct had the following effects: (1) price

competition for generic propranolol was restrained, suppressed, and eliminated throughout

Arkansas; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at

artificially high levels throughout Arkansas; (3) Plaintiff and the Damages Class were deprived

of free and open competition; and (4) Plaintiff and the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

      c.      During the Class Periods, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

      d.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Damages Class have been injured and are threatened with further injury.

      e.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code, §§ 4-88-101, *et. seq.*, and, accordingly, Plaintiff and the Damages Class seek all relief available under that statute.

112.    <u>California:</u>  By reason of the foregoing, Defendants have violated California's Unfair Competition Law, California Business and Professions Code, §§ 17200, *et seq.*  Plaintiff on behalf of the Damages Class alleges as follows:

      a.      Defendants committed acts of unfair competition, as defined by Section 17200, *et seq.*, by engaging in a conspiracy to fix and stabilize the price of generic propranolol as described above.

      b.      The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as described above, constitute a common and continuing course of conduct of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices within the meaning of Section 17200, *et seq.*, including, but not limited to:  (1) violations of Section 1 of the Sherman Act, as set forth above; and (2) violations of the Cartwright Act, California Business and Professions Code, §§ 16720, *et seq.*, as set forth above.

c.      Defendants' acts, omissions, misrepresentations, practices and nondisclosures are unfair, unconscionable, unlawful and/or fraudulent independently of whether they constitute a violation of the Sherman Act or the Cartwright Act.

d.      Defendants' acts or practices are fraudulent or deceptive within the meaning of Section 17200, *et seq.*

e.      Defendants' conduct was carried out, effectuated, and perfected within the State of California.  Defendants maintained offices in California where their employees engaged in communications, meetings, and other activities in furtherance of Defendants' conspiracy.

f.      By reason of the foregoing, Plaintiff and the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as result of such business acts and practices described above.

g.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of California Business and Professions Code, §§ 17200, *et seq.*, and, accordingly, Plaintiff and the Damages Class seek all relief available under that statute.

113.    <u>District of Columbia:</u>  By reason of the foregoing, Defendants have violated the District of Columbia Consumer Protection Procedures Act, District of Columbia Code, §§ 28-3901, *et seq.*  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which generic propranolol was sold, distributed, or obtained in the District of Columbia.  Defendants took efforts to conceal their agreements from Plaintiff and members of the Damages Class.  This conduct on the part of the Defendants constituted "unlawful trade practices" in violation of District of Columbia Code,

§ 28-3904.

b.      Defendants and their co-conspirators possessed the sole power to set prices of generic propranolol, and used this power to conceal their price-fixing conspiracy from Plaintiff and members of the Damages Class.  Plaintiff and members of the Damages Class were therefore unaware that they were being unfairly and illegally overcharged for generic propranolol.  Defendants' conduct was unconscionable because they used their power to set prices at the expense of Plaintiff and the public.

c.      Defendants' unlawful conduct had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout the District of Columbia; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and the Damages Class were deprived of free and open competition; and (4) Plaintiff and the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

d.      During the Class Periods, Defendants' illegal conduct substantially affected District of Columbia commerce and consumers.

e.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Damages Class have been injured and are threatened with further injury.

f.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code, §§ 28-3901, *et seq.*, and, accordingly, Plaintiff and the Damages Class seek all relief available under that statute.

114.    <u>Florida:</u>  By reason of the foregoing, Defendants have violated the Florida Deceptive and Unfair Trade Practices Act, Florida Statues, §§ 501.201, *et seq.*  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants' unlawful conduct had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Florida; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiff and the Damages Class were deprived of free and open competition; and (4) Plaintiff and the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected Florida commerce and consumers.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Damages Class have been injured and are threatened with further injury.

d.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Statutes, §§ 501.201, *et seq.*, and, accordingly, Plaintiff and the Damages Class seek all relief available under that statute.

115.    <u>Hawaii:</u>  By reason of the foregoing, Defendants have violated Hawaii Revised Statutes, § 480-2.  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants' unlawful conduct had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Hawaii; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and the Damages Class were deprived of free and open competition; and (4) Plaintiff and the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Damages Class have been injured and are threatened with further injury.

d.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Revised Statutes, § 480-2, and, accordingly, Plaintiff and the Damages Class seek all relief available under that statute.

116.    <u>Missouri:</u>  By reason of the foregoing, Defendants have violated Missouri's Merchandising Practices Act, Missouri Revised Statutes, § 407.010, *et. seq.*  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Plaintiff and members of the Damages Class purchased generic propranolol for personal or family purposes.

b.      Defendants engaged in the conduct described herein in connection with the sale of generic propranolol in trade or commerce in a market that includes Missouri.

c.      Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which generic propranolol was sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

d.      Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and the members of the Damages Class concerning Defendants' unlawful activities and artificially-inflated prices for generic propranolol.  The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of generic propranolol that they purchased.

e.      Defendants misrepresented the real cause of price increases and/or the absence of price reductions in generic propranolol by making public statements that were not in accord with the facts.

f.      Defendants' statements and conduct concerning the price of generic propranolol were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing generic propranolol at prices established by a free and fair market.  Defendants' unlawful conduct had the following effects: (1) generic propranolol price competition was restrained, suppressed, and eliminated throughout Missouri; (2) generic propranolol prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

g.      The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

h.      As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property.

i.      Accordingly, Plaintiff and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Missouri Revised Statutes, § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce," as further interpreted by the Missouri Code of State

Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Missouri Revised Statutes, § 407.025, which provides for the relief sought in this count.

117.    <u>Montana:</u>  By reason of the foregoing, Defendants have violated the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Montana Code, §§ 30-14-101, *et seq.* and §§ 30-14-201, *et seq.*  Plaintiff on behalf of the Damages Class alleges as follows:

a.    Defendants' unlawful conduct had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Montana; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiff and the Damages Class were deprived of free and open competition; and (4) Plaintiff and the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.    During the Class Periods, Defendants marketed, sold, or distributed generic propranolol in Montana, and Defendants' illegal conduct substantially affected Montana commerce and consumers.

c.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Damages Class have been injured and are threatened with further injury.

d.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Montana Code, §§ 30-14-101, *et seq.* and §§ 30-14-201, *et seq.*, and, accordingly, Plaintiff and the Damages Class seek all relief available under that statute.

118.    <u>Nebraska:</u>  By reason of the foregoing, Defendants have violated Nebraska's Consumer Protection Act, Nebraska Revised Statues, §§ 59-1601, *et seq.* Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants' unlawful conduct had the following effects: (1) generic propranolol price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) generic propranolol prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) Plaintiff and the Damages Class were deprived of free and open competition; and (4) Plaintiff and the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected Nebraska commerce and consumers.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Damages Class have been injured and are threatened with further injury.

d.      Defendants' actions and conspiracy have had a substantial impact on the public interests of Nebraska and its residents.

e.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nebraska's Consumer Protection Act, Nebraska Revised Statues, §§ 59-1601, *et seq*., and, accordingly, Plaintiff and the Damages Class seek all relief available under that statute.

119.    New Mexico:  By reason of the foregoing, Defendants have violated the New Mexico Unfair Practices Act, New Mexico Statutes, § 57-12-1, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which generic propranolol was sold, distributed, or obtained in New Mexico.  Defendants took efforts to conceal their agreements from Plaintiff and members of the Damages Class.  This conduct on the part of the Defendants

constituted "unfair or deceptive trade practices and unconscionable trade practices" in violation of New Mexico Statutes, § 57-12-3.

        b.      Defendants and their co-conspirators possessed the sole power to set prices of generic propranolol, and used this power to conceal their price-fixing conspiracy from Plaintiff and members of the Damages Class. Defendants took advantage of Plaintiff's and members of the Damages Class' lack of knowledge to a grossly unfair degree, within the meaning of New Mexico Statutes, § 57-12-2(E).

        c.      Defendants' unlawful conduct had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout New Mexico; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and the Damages Class were deprived of free and open competition; and (4) Plaintiff and the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

        d.      During the Class Periods, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

        e.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Damages Class have been injured and are threatened with further injury.

        f.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Statutes, § 57-12-1, *et seq.*, and, accordingly, Plaintiff and the Damages Class seek all relief available under that statute.

      120.   <u>New York:</u>  By reason of the foregoing, Defendants have violated New York General Business Laws, § 349, *et seq*. Plaintiff on behalf of the Damages Class alleges as follows:

a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and noncompetitive levels, the prices at which generic propranolol was sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiff and the Damages Class.

b.    The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of New York General Business Laws, § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

c.    Defendants made certain statements about generic propranolol that they knew would be seen by New York residents and these statements either omitted material information that rendered the statements they made materially misleading or affirmatively misrepresented the real cause of price increases for generic propranolol.

d.    Defendants' unlawful conduct had the following effects: (1) generic propranolol price competition was restrained, suppressed, and eliminated throughout New York; (2) generic propranolol prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiff and the Damages Class were deprived of free and open competition; and (4) Plaintiff and the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

e.    During the Class Periods, Defendants' illegal conduct substantially affected New York commerce and consumers.

f.      During the Class Periods, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed generic propranolol in New York.

g.      Plaintiff and members of the Damages Class seek all relief available pursuant to New York General Business Laws, § 349(h).

121.    <u>North Carolina:</u>  By reason of the foregoing, Defendants have violated North Carolina General Statutes, §§ 75-1.1, *et seq.*  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which generic propranolol was sold, distributed, or obtained in North Carolina.  Defendants took efforts to conceal their agreements from Plaintiff and members of the Damages Class.  Defendants and their co-conspirators possessed the sole power to set prices of generic propranolol, and used this power to conceal their price-fixing conspiracy from Plaintiff and members of the Damages Class.  Plaintiff and members of the Damages Class were therefore unaware that they were being unfairly and illegally overcharged for generic propranolol.

b.      Defendants' unlawful conduct had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout North Carolina; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and the Damages Class were deprived of free and open competition; and (4) Plaintiff and the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

c.      During the Class Periods, Defendants marketed, sold, or distributed generic propranolol in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

d.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Damages Class have been injured and are threatened with further injury.

e.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina General Statutes, §§ 75-1.1, *et seq.*, and, accordingly, Plaintiff and the Damages Class seek all relief available under that statute.

122.    Rhode Island:  By reason of the foregoing, Defendants have violated the Rhode Island Deceptive Trade Practices Act, Rhode Island General Laws, §§ 6-13.1-1, *et seq.*  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Plaintiff and members of the Damages Class purchased generic propranolol for personal or family purposes.

b.      Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which generic propranolol was sold, distributed, or obtained in Rhode Island.  Defendants took efforts to conceal their agreements from Plaintiff and members of the Damages Class, including through affirmative misrepresentations and omissions of information important to Plaintiff and members of the Damages Class.

c.      Defendants and their co-conspirators possessed the sole power to set prices of generic propranolol, and used this power to conceal their price-fixing conspiracy from Plaintiff and members of the Damages Class.  Plaintiff and members of the Damages Class were

therefore unaware that they were being unfairly and illegally overcharged for generic propranolol.

        d.      Defendants' unlawful conduct had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Rhode Island; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiff and the Damages Class were deprived of free and open competition; and (4) Plaintiff and the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

        e.      During the Class Periods, Defendants' illegal conduct substantially affected Rhode Island commerce and consumers.

        f.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Damages Class have been injured and are threatened with further injury.

        g.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island General Laws, §§ 6-13.1-1, *et seq.*, and, accordingly, Plaintiff and the Damages Class seek all relief available under that statute.

     123.   <u>South Carolina:</u>  By reason of the foregoing, Defendants have violated the South Carolina Unfair Trade Practices Act, South Carolina Code, §§ 39-5-10, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

        a.      Defendants' unlawful conduct had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout South Carolina; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiff and the Damages Class were

deprived of free and open competition; and (4) Plaintiff and the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

b.      During the Class Periods, Defendants' illegal conduct substantially affected South Carolina commerce and consumers.

c.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Damages Class have been injured and are threatened with further injury.

d.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of South Carolina Code, §§ 39-5-10, *et seq.*, and, accordingly, Plaintiff and the Damages Class seek all relief available under that statute.

124.    Vermont:  By reason of the foregoing, Defendants have violated the Vermont Consumer Protection Act, 9 Vermont Statutes, §§ 2453, *et seq*.  Plaintiff on behalf of the Damages Class alleges as follows:

a.      Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which generic propranolol was sold, distributed, or obtained in Vermont.  Defendants took efforts to conceal their agreements from Plaintiff and members of the Damages Class, including through affirmative misrepresentations and omissions of information important to Plaintiff and members of the Damages Class.

b.      Defendants and their co-conspirators possessed the sole power to set prices of generic propranolol, and used this power to conceal their price-fixing conspiracy from Plaintiff and members of the Damages Class.  Plaintiff and members of the Damages Class were therefore unaware that they were being unfairly and illegally overcharged for generic propranolol.

c. Defendants' unlawful conduct had the following effects: (1) price competition for generic propranolol was restrained, suppressed, and eliminated throughout Vermont; (2) prices for generic propranolol were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and the Damages Class were deprived of free and open competition; and (4) Plaintiff and the Damages Class paid supra-competitive, artificially-inflated prices for generic propranolol.

d. During the Class Periods, Defendants' illegal conduct substantially affected Vermont commerce and consumers.

e. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Damages Class have been injured and are threatened with further injury.

f. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont Statutes, §§ 2453, *et seq.*, and, accordingly, Plaintiff and the Damages Class seek all relief available under that statute.

## FOURTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Damages Class Against All Defendants)

125. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs set forth above.

126. As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched by the receipt of unlawfully and artificially-inflated prices for generic propranolol.

127. Defendants have benefited from their unlawful conduct described above. It would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from

the overpayments made by Plaintiff and members of the Damages Class for generic propranolol manufactured by Defendants during the Class Periods.

128.    Plaintiff and members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiff and members of the Damages Class are therefore entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and members of the Damages Class may make claims on a *pro rata* basis.

## VI.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff and members of the Classes pray for relief as set forth below:

1.    Certification of the action as a class action pursuant to Federal Rule of Civil Procedure 23, and appointment of Plaintiff as Class Representatives and Plaintiff's proposed class counsel as Class Counsel;

2.    A declaration that Defendants' conduct constituted:  (1) an unlawful restraint of trade in violation of the federal and state statutes cited herein; (2) unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes cited herein; and (3) acts of unjust enrichment;

3.    Restitution and/or damages to members of the Damages Class for their purchases of generic propranolol at inflated prices;

4.    Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

5.    Pre-judgment and post-judgment interest on such monetary relief;

6.    Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendants as a result of the anticompetitive conduct alleged herein;

7.      An injunction against Defendants, their affiliates, successors, transferees, assignees, and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

8.      The costs of bringing this suit, including reasonable attorneys' fees; and

9.      All other relief to which Plaintiff and members of the Classes may be entitled at law or in equity.

## VII.    **JURY DEMAND**

Plaintiff hereby requests a jury trial on any and all claims so triable.

Dated: February 10, 2017                Respectfully submitted,


By:___*/s/ Brendan P. Glackin*_____
        Elizabeth J. Cabraser (Pro Hac Vice forthcoming)
        Richard M. Heimann (RH 9373)
        Eric B. Fastiff (Pro Hac Vice forthcoming)
        Brendan P. Glackin (BG 7314)
        Dean M. Harvey (Pro Hac Vice forthcoming)
        David T. Rudolph (Pro Hac Vice forthcoming)
        Bruce W. Leppla (BL 6583)
        Michelle A. Lamy (Pro Hac Vice forthcoming)
        LIEFF CABRASER HEIMANN & BERNSTEIN,
        LLP
        275 Battery Street, 29th Floor
        San Francisco, CA  94111-3339
        Telephone:   (415) 956-1000
        Facsimile:   (415) 956-1008
        Email: ecabraser@lchb.com
        Email: rheimann@lchb.com
        Email: efastiff@lchb.com
        Email: bglackin@lchb.com

Email: dharvey@lchb.com
Email: drudolph@lchb.com
Email: bleppla@lchb.com
Email: mlamy@lchb.com

Daniel E. Seltz (DS 0837)
Annika K. Martin (AM 2972)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:   (212) 355-9500
Facsimile:    (212) 355-9502
Email: dseltz@lchb.com
Email: amartin@lchb.com

*Attorneys for Plaintiff American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan and the proposed Classes*

Dan Drachler (DD 1526)
Robert S. Schachter (RS 7243)
Joseph Lipofsky (JL 0971)
Sona Shah (SS 4712)
ZWERLING SCHACHTER & ZWERLING, LLP
41 Madison Ave.
New York, NY 10010
Telephone:(212) 223-3900
Facsimile:  (212) 371-5969
Email: ddrachler@zsz.com
Email: rschacter@zsz.com
Email: jlipofsky@zsz.com
Email: sshah@zsz.com

*Attorneys for the proposed Classes*

Audrey A. Browne (AB 1636)
Seth Kennedy
AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES DISTRICT COUNCIL 37 HEALTH & SECURITY PLAN
125 Barclay Street, Rm. 313
New York, NY 10007

Telephone: (212) 815-1304
Facsimile (212) 815-1900
Email: abrowne@dc37.net
Email: skennedy@dc37.net

*Attorneys for Plaintiff American Federation of
State, County and Municipal Employees District
Council 37 Health & Security Plan*